Good morning, Your Honors. I'm A.J. Cutchins. I'm here representing the appellant Steven Jaffe. May it please the Court. Beneath the lurid pulp fiction wrapper that this case comes wrapped in lies some quite plain violations of both Brady v. Maryland and the Sixth Amendment. The State hid the fact that a key witness who testified as a police officer was actually under investigation for racketeering, for human trafficking and conspiracy. This wasn't disclosed to the defense until long after the officer had testified he'd been indicted and fired from the police force. By that point, the defense had forever lost the opportunity to cross-examine the witness. But the State was nonetheless allowed to use his uncross-examined testimony to convict the appellant. In the end, though, the jury was fully aware of what happened to the officer. Well, they weren't fully aware of what happened. No, they knew that he had been terminated from the police department, that he had been arrested for or he had been charged with activity relating to prostitution activities. Right. They weren't aware of all of the charges. That's true. Well, how much would you – even if he had gone to trial, you're not going to parade all of that in front of the jury, all the details of it. If he would have gone – I'm so sorry to interrupt, Your Honor. Pardon? If he would have gone to trial, Officer Miller never would have testified. No, no, no. Let's assume Officer Miller would have testified for a moment. Let us assume – we can assume that, but that would violate the test system. Well, I guess my only concern is that the jury – in the end, the jury knew about this. They knew some part of it. And the counsel argued these facts to the jury. That may be true, but the fact is that – what Brady asks is, is there a reasonable probability that the outcome would have been different if the evidence had been timely? What do you do with cocaine charges? The cocaine charges – So he says in the hospital to the one officer, did you find the cocaine? Or words to that effect. I think he even said, look in my jacket pocket. That was what the officer said. However, without – I mean, that's pretty powerful. That is powerful, but without actually having cocaine, they can't sustain a possession for cocaine. The fact that he said – that he said, did you find the cocaine, does not prove that at that – I thought they found some trace elements of cocaine. They found cocaine metabolites, which proved only that sometime within the last three days he had had cocaine. That, frankly, Your Honor, cuts both ways. There was not sufficient proof that he had – that he was in possession of cocaine at the time of his arrest, which is what would have needed to have been shown, without the testimony of Officer Miller. He had cocaine in his system. He – no, Your Honor, that's not quite right. He had cocaine metabolites in his system. The – well, it is – I don't know the difference. Explain it to me. Yes, ma'am. They did test him to see if he had cocaine in his system, and the evidence was he did not have cocaine in his system. If he had cocaine in his system, then that would have indicated that he had very recently taken cocaine. What they found were cocaine metabolites, meaning traces, which proved only that sometime within three days he had taken cocaine. That is not possession – current possession of cocaine sufficient to make out the extremely serious charges of which he was convicted that required that he was contemporaneously in possession of both cocaine and the firearms that were found in his car. Let me ask – so it seems to me that you'd be asking somewhat for an extension of Brady. No, Your Honor.  Well, what case – so you're asking here that this Brady information, this Brady material, should have been disclosed pre-preliminary hearing. What I'm – Correct? I'm – in this case – That's the bottom line. In this case, yes. And I'm standing – What – do you get that just from Brady, or do you get that from – I get that from Kiles v. Whitley. Kiles says – says there is no fixed point at which disclosure must be made. The point at which disclosure must be made is the point at which it would be reasonably likely that it would make a difference. In this case, that moment came when they put Officer Miller on the stand and induced the testimony that they later used to convict the appellant at trial. That was the moment when disclosure was critical and when the failure to disclose lightly changed the outcome of the case. What do we do with Ruiz? With – I'm sorry. The Supreme Court's decision in Ruiz. Ruiz – actually, Ruiz, I think, is, if anything, helpful to us. Ruiz said that – that, as the State points out, that disclosure under Brady is a trial-related right. It goes to whether the – it goes to what the effect was on the trial. What the Supreme Court said in Ruiz is where the disclosure was prior to a plea, there was no trial. It didn't affect the trial. In this case – Well, all a preliminary hearing is for is to determine probable cause that somebody should be bound over for trial. Well, one would think, but in this case, the evidence – Well, but that – isn't that what a preliminary hearing is for? That is the purpose. That's the purpose of a preliminary hearing. That is the purpose of – They can have a cop get up there on the stand and just testify from a police report. They can, as it happened, though. Right. I understand. As it happened, though, in this case, the only evidence – the only evidence of him possessing drugs was taken at the preliminary hearing without cross-examination. And it was taken without cross-examination because the State was hiding the ball. This officer had been under investigation for two years. The DA knew that an officer in that police force was under investigation and said, oh, I don't want to know anymore, meaning I am going to willingly risk violating the Constitution every time you put a Sunnyvale cop on the stand, because that might be the cop who is dirty. But we're going to make sure that the defense never gets to impeach this person. So we're not – we are not saying that there should be a rule that before preliminary hearings, Brady material must be disclosed. We're saying only what Kiles says, which is at the point it becomes critical, you disclose it. And maybe that's the day before trial, and maybe that's before the preliminary hearing, and maybe that's the day he's arrested. It depends – it turns on the facts of the case. It turns on the causation test that's set forth in Brady. In this case, it's quite clear. So is there any other case other than Kiles that you rely on? Well, there are – yes, there are. I think I cited a number of this Court's cases that took the language of Kiles and extrapolated on it. That required disclosure before a preliminary hearing? Nobody – I am going to beg to differ with that approach. It's not that they require it before a preliminary hearing or at any given time. I mean, the State says, well, as long as it's, you know, disclosed in time for trial, that satisfies Brady. But Brady required disclosure a good bit before trial, and so did Giglio. At what exact point? What Kiles says is, well, the prosecutor knows because the prosecutor's got that information. And if they – and it's up to them to disclose before it becomes critically important. And if the prosecutor attacks too close to the wind, which is what happened here, then the Constitution is offended. Well, I mean, in the – like, I come back to what I start – where I started out with it. Yes, sir. I mean, in the State trial, there was a stipulation about his arrest – or about his termination and the fact that he was charged. That – but that's simply not what Brady asks. What Brady asks is if there was timely disclosure. What you're saying is that they – is that they – is that they had disclosed this pre-preliminary hearing. He never would have testified. He never would have testified at trial. That's right. End of story. And without – you know, the prosecutor is on record as saying Miller's testimony wasn't peripheral to this case, I'm quoting. It wasn't some remote issue. It was the heart of the drug charges in this case. And, you know, I can understand – There was some conflict between – between your client and the other officer who – who helped – who was at the scene. There was some dispute about actually how he found the – the meth. The – How the – how the cop – Yeah. The cop testified – Officer Miller testified that he found – when he checked the wallet, he pulled out the paper, little pieces of paper. Yes. It looked like meth, and so he did an on-the-spot test of some sort. Yes. Then there was another officer who testified, well, no, that really happened at the station. At the lab. At the lab. Right. And he was there when that happened. Right. Right. The other officer testified that – that it was sometime much later – I don't know how much later. Sometime later, they were at the lab, and Miller comes in with the wallet that all of them had previously looked through, and looks at the wallet and says, oh, look what I found here. And there's two bindles of meth – methamphetamine. Well, we're not trying the, you know, the credibility of that. No. But the point is, without Miller's testimony, all you have is the other cop saying what Miller told him. I mean, it's hearsay. It is – it doesn't establish that there – that this man possessed methamphetamine at that time. I get that there is a certain counterintuitive quality to saying, well, you know, if impeached, maybe it wouldn't have been different. Maybe it would, or maybe it wouldn't. That's not what Brady asks. And, you know, when you get to the Confrontation Clause, which I'm hoping to speak to briefly, this Court's cases and the Supreme Court's cases are very clear. You don't engage in speculation about what would have happened if the Constitution hadn't been violated. When the evidence is – Actually, I'll be quite frank with you. When I looked at this, it sounded like this – it sounded more like a Confrontation Clause problem than it did a Brady problem. So I think let us hear from you as to whether the Confrontation Clause was waived or otherwise properly developed. I'd be glad to address that. The – I think that's pretty critical to your case, frankly. I think it is in regards to the Confrontation Clause claim. The – and when I – I'll be frank. When I first got the case and I saw that the Court had certified a Confrontation Clause claim and I looked at the – at the briefs from the State court, I was appointed by this court, and I – there were no headings saying there's a – I thought, you know, we have an exhaustion problem. But then I – when you read the arguments, it's very clear that what they were arguing was the Confrontation Clause. They say it by name. Both – both the government – the State and the defense argue the Confrontation Clause. The only case – the only case that was discussed was Baysmore, which is solely a Confrontation Clause case. What – what the Supreme Court said in Baldwin v. Reese, and this Court echoed in Davis, is a litigant wishing to raise a Federal issue can easily indicate the Federal law basis of his claim by citing a case deciding such a claim on Federal grounds. It's not necessary to have an argumentative heading. It's not even necessary to invoke by name the – the clause. In this case, both sides argued at every step in the trial court, in the court of appeal, and in the district court. Both sides argued back and forth the Confrontation Clause. In fact, the very first thing that my client said when he stood up – and by the way, I meant to ask to reserve a couple of minutes. You're down to two minutes, so. I'll give you a minute. Don't worry. So the very first – the very first thing that my client said when he stood up in the trial court is my right to cross-examine has been – has been violated by using this man's testimony. In the State court of appeal, in the State supreme court, what was argued was Baysmore, which was a Confrontation Clause case with almost precisely the same facts as here. I would submit that it was fairly presented. It's no secret to the State. It was no secret to the State courts. And when you get to the Confrontation Clause, the analysis, Judge Fletcher, I would agree is quite simple. Crawford teaches that testimonial hearsay, including preliminary hearing testimony, can't be introduced unless the defendant has had an opportunity to engage in effective cross-examination of the witness. This means, according to the case that the State has cited, Fensterer, that the cross-examiner must be allowed to impeach, i.e., discredit the witness, close quote. The defense never had that opportunity in this case. In the end, Your Honors, it doesn't matter whether what happened here is framed as a Brady error or as a Confrontation Clause violation. The State's unexplained refusal to remedy that constitutional wrong is impossible to justify. It is unreasonable. It is contrary to Federal law. The appellant is entitled to a new fair trial. Roberts. Okay. I'll give you a minute for rebuttal, but let's hear from the State. Thank you, Your Honor. Good morning. I believe that these issues have been fairly well covered in the briefs, and I don't want to rehash the contents of the briefs, but I will focus my attention on the Confrontation Clause issue. As the Court has pointed out, the jury was advised after the defense was informed prior to the trial that Officer Miller faced Federal charges for corruption and had been fired by the police department for that reason. Had the fact of an investigation been disclosed to the defense prior to a preliminary hearing, and had Officer Miller been permitted to be questioned about that at the preliminary hearing, the only information that would have been added to the information already before the jury was that the charges and the firing were preceded by an investigation. Now, in this case. Did the testimony have come in at all? Here you kind of backdoored and got in Miller's testimony, which seemed very peculiar to me. But had it been revealed, would it have come in at all? The investigation information at the preliminary hearing you're talking about? Well, would Miller have testified to anything at trial? Well, Miller did not testify to anything at trial. I know that, but just assume he gets to trial and he's there and he's testifying. What would come in if he had not invoked the Fifth Amendment? Okay. Which is kind of the question I had asked. Well, certainly he would have been impeached with the fact that he had been charged with corruption and the fact that he had been probably fired by the police department. And would we then have believed that he found anything in the wallet after other people had examined the wallet and found nothing? Well, I would say that his credibility might have been impeached, but his testimony was corroborated in large measure by the evidence that was found in the car and the defendant's blood and the testimony of the other officers. But not what was in the wallet. Well, my recollection is there was an officer watching as Miller emptied the contents of the wallet and found the two bindles. So his testimony would have been corroborated to that extent. But the jury in this case, having heard Miller's preliminary hearing testimony, did hear that he had been fired by the police department and charged with federal charges due to corruption. So they had before them the information they needed to assess his credibility. Did the judge give any particular jury instruction on credibility in light of this evidence? Well, I don't recall specifically, but typically judges do give standard, as you recall, instructions on credibility of witnesses. You've read the instructions? Is there a difference between the cocaine conviction and the methamphetamine conviction insofar as this is concerned? Well, I would say that there is a difference between the two. The testimony, the evidence is somewhat different as to the two drugs. The officer, other than Officer Miller, testified that the defendant at the hospital asked her if they had found the cocaine in his jacket in the car, and she then set in motion the discovery of that stuff. So the evidence of the possession of cocaine was corroborated by the defendant's own statement to the officer and the discovery of cocaine metabolites in the defendant's blood. As to the methamphetamine, the testimony that the bindles of methamphetamine were found in the wallet came from Officer Miller, but that was corroborated by the testimony of another officer, whose name I don't recall at the moment, who testified that Officer Miller was observed while he emptied the contents of the wallet and discovered the bindles. So the nature of the corroboration is different, but both are corroborated by testimony other than Officer Miller's. Is the preliminary hearing part of the trial, right? I don't believe the entire preliminary hearing is, I don't recall. Typically, as you know, that's – oh, as a general matter, no. What is it? Well, it's, you know, it's a proceeding that precedes the trial. It's not automatically part of the trial record. It frequently is, though, isn't it? It certainly can be. Where the officers get up on the stand and testify? It certainly can be, yes. It's not automatically. Is it their testimony for impeachment purposes? Certainly. In looking through the wallet, the other officer you say was watching, but did he see that it was cocaine? Or did he depend on what Officer Miller told him? Well, my recollection is that an officer watched Miller empty the contents of the wallet and discovered the cards and the bindles. And that was meth, wasn't it? Not cocaine? That was the methamphetamine. That's correct. And I believe that there is also testimony, and I don't recall where it's from, that Miller told an officer that he found the methamphetamine in the wallet. But there's also testimony from an officer that Miller was observed while he was emptying the wallet and discovering the bindles. How long had Miller had the wallet in his possession? I mean, he had time to put it in there. Well, not for very long. My understanding is that the wallet passed through the hands of three officers, and then Miller passed it back, and then it was passed back to him to empty. So is Brady just a trial right? Well, I would say that Brady is a trial right. And the Supreme Court --. Is it only a trial right? When does it come into play? Well, I would say that the Supreme Court has been careful not to move Brady into the pretrial arena and to leave that to the rules of state evidentiary rules. And the same is true of the Confrontation Clause. The Supreme Court has been careful not to allow the confrontation or the due process or the Confrontation Clause issues to be moved into the pretrial arena. And perhaps the court is concerned that doing so would convert a preliminary proceeding like a preliminary hearing into a mini-trial involving discovery by both sides and then a long, drawn-out proceeding, which is really designed only to establish probable cause. That may be holding them back, I don't know. But it seems to me from the cases it's pretty clear that they do not want either of these constitutional rights to be moved into the pretrial arena. They are trial rights. What cases would you cite for that proposition? Well, I cite Ruiz on the Brady point. And in our brief, I cited McCrae v. Illinois on both points. Let me ask you this. Switching to the Confrontation Clause issue. As I said to counsel, when I first looked at this, it struck me more as a confrontation problem. Well, I would say that because he the officer does testify at the preliminary hearing. Yes. The DA wants to use it at the trial. The judge, apparently there was an objection. The judge said over the fact that about, you know, this whole business with Officer Miller, when Miller said he wasn't going to testify, and then the judge allows it to be used. I mean, where's the opportunity to cross-examine Miller? Well, I would say that had Mr. Jaffe had you as his attorney, it probably would have been raised on appeal in the state court. In that fashion, it wasn't. And I would say that the practical reason that it wasn't raised is the existence of the stipulation, which essentially blows the Confrontation Clause issue out of the water here. Instead, they raised the Brady claim on the ground that ---- Well, you know, it's a little bit different. You know, if you're in a courtroom and you have witnesses testifying there, the witness is up on the stand and, you know, you can really zero in on him and you can show, you can leave a real impression with the jury that this guy just might be lying. And here, what would happen here was you had this little skit that took place in the courtroom where they brought in somebody to act as the officer, playing the role of Officer Miller and reading the preliminary hearing testimony. I mean, what's that all about? Well, you've got the prosecutor stipulating that Officer Miller was fired for corruption and was facing federal charges. That's pretty powerful information. That's more powerful than information that in an ongoing confidential investigation is occurring. I mean, that, in my opinion ---- Pardon me? I'm sorry. If the Brady matter doesn't have to be released before pretrial, then isn't it a reasonable argument that anything that's said at pretrial shouldn't be admissible at trial? Well, I don't know exactly how much you're trying to encompass with that question, but I would say this, that the preliminary hearing is designed to address a fairly limited issue, and the Supreme Court has been careful not to allow the Brady or the Confrontation Clause issues to move into the pretrial arena. So ---- Have they had occasion to comment specifically on that? Well, I'd say ---- I'm not aware of any case where they are really confronted with the question. Well, I would agree that the Supreme Court ---- There is no, as far as I'm aware, no existing United States Supreme Court authority directly addressing this point. Well, that doesn't mean that they've been careful to avoid it. Maybe it's just not been presented. Well, McRae v. Illinois, I think, is pretty clear that neither the due process or Confrontation Clause require that the defendant discover an informant's identity prior to trial. That's an example. Ruiz is another example where a confidential investigation need not be disclosed to the defense pretrial. Although they have not directly said it, they've said it in enough ways that it seems to me pretty clear that it would be a fairly significant step to take to require Confrontation Clause and due process discovery be applied in the pretrial arena. It hasn't been done by the U.S. Supreme Court, and it would be a significant step for this Court to take it in an AEDPA habeas. I'm not sure you've answered my question. If that's the case, if we don't try to do anything before the pretrial, and it turns out that testimony at the pretrial, as in this case, is now going to be introduced at trial, there's something wrong with that. Wouldn't it be that you'd say that, all right, if we're not going to permit those things pretrial, that we shouldn't permit anything that's said at pretrial to be introduced? Well, I understand your question, and I would say that would be a pretty large step for this Court to take. In this case, the problem was solved by the stipulation. Under California evidence law, hearsay can be used to attack the credibility of a hearsay witness. It's another method of dealing with this. But as far as I understand the cases, if a witness has testified at the preliminary hearing, the defendant has been present with his attorney, and the witness has been subjected to thorough cross-examination at that hearing, with a judge present and the matter recorded. That is sufficient for Confrontation Clause purposes to permit that evidence to be introduced at the trial. I thought it was the right to... I understand that, that if they're subjected to cross-examination at the preliminary hearing, that normally would solve it, but it doesn't solve it if the government has withheld testimony that could have been used at the preliminary hearing. Well, I agree that that presents a problem, and that is the issue that was faced by the Baysmore Court. Now, last night I checked to see if any United States Supreme Court decision had cited Baysmore. I found none. In fact, I didn't find any decisions from this circuit that had cited Baysmore or any cases in the California courts that had cited Baysmore. The remedy that Baysmore applies essentially converts the Confrontation Clause requirement into a pretrial disclosure requirement. The United States Supreme Court has been careful not to cross that line. Baysmore crossed that line, and I don't believe it would be appropriate for this court to follow Baysmore when the United States Supreme Court has not done so in an AEDPA habeas case. Isn't that basically pretty unfair to defend it, to view it that way, that you don't have to disclose things that would be valuable for impeachment before the pretrial so that they could be used in a cross-examination, and yet you can introduce that at trial? Well, perhaps considerations of that sort would lead the United States Supreme Court to declare a Brady or Confrontation Clause disclosure requirement in the pretrial context. They have not done so. Baysmore did so, but that's a State of Pennsylvania case. Has the Supreme Court been faced with that question? I have not found a case in which it has been faced with that question. I agree. Do you think it would make a difference to the lawyer about the lawyer made a decision at the preliminary hearing not to cross-examine Officer Miller? Right. Because those proceedings nowadays go pretty quickly. There's not much to them. But do you think he might have made a different decision if he had known ahead of time that Officer Miller was under investigation? Well, in my view, that's speculation. He might have spent his time cross-examining Miller. He might have tried to convince Miller that he shouldn't testify at all at the preliminary hearing. That is all sheer speculation. The bottom line in this case is that the defendant had a fair trial because the prosecutor stipulated that the officer had been fired due to corruption and was facing Federal corruption charges, and that was laid out for the jury, no dispute from the prosecutor. It was a fair trial here. Okay. Thank you for your time. I'm sorry. Just a minute here for rebuttal. All right. I'll talk fast, Your Honor. We're not – we are not saying that either the confrontation clause or the Brady right are preliminary hearing rights. We're not saying that the defendant didn't get a fair preliminary hearing. We're saying he didn't get a fair trial because uncross-examined testimony was used against him. The – I'm sorry. Why didn't the – Mr. Cooper. I'm sorry. Why didn't the stipulation take care of it? The – you know, the Supreme Court has addressed that quite directly, and this Court has as well. In the confrontation clause situation, the Supreme Court said an assessment of harmlessness can't consider – cannot include consideration of whether the witness's testimony would have been unchanged or the jury's assessment unaltered had there been confrontation. Such an inquiry would obviously involve pure speculation. Harmlessness must therefore be determined on the basis of the remaining evidence. Crawford says that this evidence is barred. You don't look at, well, how would it have gone? That is sheer speculation. You say, was there other evidence sufficient to do the job? And there wasn't. The – as I understand the State's argument, the entire argument about the confrontation clause is that, that the stipulation somehow is a substitute for confrontation rights, and it wasn't. There is no speculation about whether if defense counsel had had this information prior to the preliminary hearing, Officer Miller would – obviously he would not have testified. That's the only reasonable inference. As soon as it was out that he was going to be impeached on this basis, he took the Fifth Amendment. He would have here. We are not asking to extend Brady. We're asking to apply Brady and Kiles v. Whitley, which is a straightforward causation test. I would suggest that it is the State that is asking for a radical modification of the Brady test, which asks only but for causation. If this had been disclosed in a timely fashion, what would the result have been? And in this case, it's quite clear. There would not have been evidence sufficient to convict the defendant in this case. Okay. You've got to wrap it up. Yes, Your Honor. The last point that I'll make is the State says, well, there was a right to cross-examine – as Judge Pai, as you pointed out, there was no cross-examination. And the Confrontation Clause is not satisfied by saying to defense counsel, oh, well, you can cross-examine him without having any of the ammunition to cross-examine him. What the cases say is that the right to cross-examination is a right to effective cross-examination. That wasn't here. By the way, the quote regarding Confrontation Clause prejudice came out of Coy v. Iowa. It was reiterated by this Court in the United States v. Nguyen. Thank you very much, Your Honors. Thank you, counsel. Very interesting case. The matter is submitted. We appreciate your arguments.
judges: Hug, Fletcher, Paez